# United States District Court

NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

(1) Anthony Smith and
(2) Michael Mahoney

CRIMINAL COMPLAINT

CASE NUMBER: 05-MJ-338

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
SEP 14 2005
AT____ O'CLOCK____
Lawrence K. Baerman, Clerk - Syracuse

I, Thomas Throne, being duly sworn state the following is true and correct to the best of my knowledge and belief:

Beginning on or about September 12, 2005, in Jefferson County, in the Northern District of New York, the defendants did:

Conspire, or agree with others to possess with intent to distribute more than 5 grams of cocaine base (crack), a Schedule II controlled substance,

in violation of Title 21 United States Code, Section(s) 841(a)(1), 841(b)(1)(B) &846

I further state that I am a Special Agent with DEA and that this complaint is based on the following facts:

See Attachment

Continued on the attached sheet and made a part hereof.

Thomas Throne
Special Agent, DEA

Sworn to before me, and subscribed in my presence,

September 14, 2005 at
Date

Syracuse, New York

George H. Lowe
United States Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT OF THOMAS THRONE

I, Thomas Throne, being duly sworn, hereby state:

1. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA). I have been employed with the DEA since May 2004. I investigate narcotics offenses which are violations of Title 21 of the United States Code. I attended the DEA Basic Agent Training Academy at Quantico, Virginia, and received extensive instruction in the investigation of narcotics offenses. I have participated in many informal exchanges of information with other local, state and federal law enforcement officers. I have arrested and assisted in the arrest of approximately 25 individuals. I have experience in the debriefing of defendants, informants, and witnesses who have personal knowledge of various types of criminal offenses, including narcotics offenses. I have recently been assigned to assist in the investigation of narcotics offenses in and around Jefferson County, New York.

2. This affidavit is offered in support of a request for a complaint that probable cause exists that ANTHONY SMITH and MICHAEL MAHONEY committed violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), all in violation of Title 21, United States Code, Section 846 for conspiracy to possess with intent to distribute and distribute a controlled substance, namely, more than five grams of cocaine base (crack). I make this affidavit based upon my personal participation in the investigation as well as discussions with other law enforcement who participated in the investigations and my review of the reports.

3. On September 12, 2005, a Metro-Jefferson Task Force confidential source made a purchase of cocaine base ("crack") from 55 High Street, Alexandria Bay. The confidential source went to the address for the purpose of making a "crack" buy to assist the Task Force in the

1

investigation of drug sales from the residence at 55 High Street, which was known to law enforcement to be a "drug-house." The confidential source had been proven reliable in the past.

4.   Once inside the residence at 55 High Street, the confidential source negotiated a purchase of crack from an individual inside the house, MICHAEL MAHONEY. MAHONEY is the owner of the house at 55 High Street and was known to the CS for many years. MAHONEY agreed to sell "a fifty" to the CS. Your affiant and the CS know a "fifty" to mean $50 worth of crack cocaine. The CS, who was wearing a recording device at the time, agreed and paid $50 in cash to MAHONEY. MAHONEY took the money and went up the stairs, and the CS could hear but could not see MAHONEY talk to at least one individual there.

5.   After a short period of time, MAHONEY returned downstairs with a small clear zip baggie which contained suspected crack cocaine and gave it to the CS. The CS then returned to the Metro-Jefferson Task Force and turned the suspected crack cocaine over to officers. A field test was conducted and the suspected crack tested positive for cocaine. Based on this sale of crack cocaine by MAHONEY and others, a state search warrant was authorized for 55 High Street on September 13, 2005.

6.   Early in the morning on September 14, 2005 officers of the Metro-Jefferson Task force and your affiant executed the warrant at 55 High Street. Two individuals were encountered downstairs and were arrested, one of whom resisted arrest. At this time MAHONEY and another individual came out from a door inside the residence marked "Apartment B." Task Force members proceeded upstairs, where they encountered ANTHONY SMITH laying on a bed in one of the bedrooms, who had appeared to have been sleeping there. MAHONEY and SMITH were detained. A canine was called in and the canine did a sniff search of the house to aid the search. The dog

2

alerted on the bed on which SMITH had been sleeping. Officers searched the bed, and in between the mattress and the box-spring they found approximately eighty three (83) pieces, known as "rocks," of suspected "crack" cocaine, in a large sandwich bag. Each of the "rocks" were individually contained in knotted clear plastic bags. From my training and experience, the approximately eighty three (83) "rocks" of "crack" sell in Watertown for $50 each, and are packaged this way for sale. I also know that the total weight of suspected "crack" seized is much more than five (5) grams, and in my estimation it is probably close to an ounce (28.35 grams). Although I do not yet know the total weight, I know this amount to clearly a distribution amount. A field test conducted on the suspected crack cocaine was positive for cocaine.

    7.    At the time of his arrest, SMITH was dressed. In his front right pocket, officers found $1209 in U.S. currency. Out of this total, $30 was the buy- money used by the CS to purchase the "fifty" two days earlier. I know that the "buy money" provided to the CS for the purchase of "crack" was xeroxed prior to the buy, by a Task Force Officer, and that this is a common law enforcement practice. The serial numbers from the bills seized from SMITH were later compared to the serial numbers on the xerox of the buy-money bills, and a $20 bill with serial CL71181297C, and a $10 bill with serial CB15023504C were identical. Therefore, I know that SMITH had in his pants pocket $1209 in cash, and that $30 of it was used by the CS to purchase crack two days earlier.

    8.    I know that SMITH was asked where he was from by a Task Force Officer, and SMITH replied "here." SMITH had previously stated to another officer that he came from Utica. When the Task Force Officer told Smith that Alexandria Bay is a long way from Utica, SMITH replied "we got lost." However, MAHONEY told your affiant that he did not know SMITH, but that he was going to rent the apartment in the house to SMITH and (Individual A) on a trial basis.

9. I also know that a scale was recovered from the search of the house, which I know to be used in the distribution and sale of drugs. I further know that the "crack" seized in the search today and the "crack" which was sold to the CS was "wet." I know from my training and experience that this "crack" is considered "bad" by users, and it is not often found. Because both the "crack" from the sale and the search were "wet," I believe that both came from the same "batch" of "crack." Based upon the above, I believe that probably cause exists that probable cause exists that ANTHONY SMITH and MICHAEL MAHONEY conspired to possess with intent to distribute and distribute more than 5 grams cocaine base (crack) between September 12 and September 14, 2005, in the Northern District of New York.

_____
Thomas Throne
Special Agent
Drug Enforcement Administration


Subscribed and sworn to before
me on this _14th_ day of September 2005.

_____
GEORGE H. LOWE
UNITED STATES MAGISTRATE JUDGE